Our third case for this morning is Morgan v. City of Chicago. Mr. Cossaglad. Good morning, Your Honor. May it please the Court, my name is Jared Cossaglad here on behalf of the appellant Clifton Morgan who is seeking a new trial because the one he received in the district court was unfair. It was unfair for three reasons. The first was because the district court did not follow the three-step procedure set forth by this court for resolving challenges under Batson v. Kentucky. The second reason is that even if it had followed that procedure, there is no credible rationale for the striking of the two veneer persons who are African-American. The third reasons relate to errors that occur during the trial and procedural issues with how it took place. Now when we find a Batson problem, the normal remedy is a limited remand so the district court can go through the process properly. And with that in mind, I'm baffled that the district court's willingness to look at this fully in the motion for reconsideration, the post-trial motion for new trial, wasn't adequate. Even if some shortcuts were taken that shouldn't have been as the trial is proceeding, there's a pretty full discussion of it all in the memorandum denying the motion for new trial. So why isn't that all that you would have coming to you anyway? Normally it would be, Your Honor, but under the circumstances during the Batson challenge, the defense never actually provided its rationale in response to the challenge for why it struck those jurors. The district court merely adopted reasons why the defense didn't want those jurors on for cause. So in the post-trial motion, what the district court did was it gave a blessing to its own rationale and said this was genuine and sincere. So, well, in other words, it finds some reasons and it examines those reasons and doesn't find anything. I mean, of course, if the prosecution, if the city had wanted to supplement those reasons, then I suppose you'd have a different situation, but by doing this, it limited the city to the reasons it had already given. In response to the challenge for cause, correct, but in doing that. So in other words, why are you better off if the city's allowed to add, you know, to one through three, four through ten? I don't see that at all. I don't think we're better off if the city's allowed to add reasons, so to speak, but if the city were forced to give those reasons at the time so that they can be adequately challenged in the context of jury selection, then we would have been better off. The discussion on the Batson... But you've agreed that the usual remedy is to just go through the Batson procedure and that's where I'm stuck because the judge does that in the post-trial memo. And like I said, normally I would agree with the court that the normal remedy, but because the second step of Batson wasn't followed and the prosecution was never forced to provide the justification at the time, the city, and then we were not able to challenge that justification at the time, the procedure is inherently flawed and there's really no way to go back and redo that. But you're not saying that you didn't know that that was what was before the court at the motion for new trial. It was one of your reasons. Of course, yeah. We're not saying that, but even if the court gets past the procedural issues that occurred with the Batson challenge, there's issues with the rationale in and of itself. And as the courts have almost widely said, there's a lot of skepticism involved when attorneys are using geography as a basis to keep jurors off of a jury. And in this case, what happened was is one jury was asked about their, one potential juror was asked about their familiarity with the area and testified that I live not far away. In a follow-up question to a second juror, the juror said I have friends or a friend who lives in the area. There was no follow-up to that, there was no other questions asked after that, like the normal question would have been, well, how far away do you live? And the Briscoe case, which... What do Chicago's lawyers do in other cases? Do they exercise peremptory challenges against jurors who live near the site of the events when the events are in a white neighborhood, for example? I don't know, Your Honor. Well, if we don't know the answer to that question, what would be the basis for concluding that here we're looking at some kind of pretext for the use of race? If the city is making this same kind of challenge in other cases, no matter what the neighborhood is, it's very hard to interpret this as a pretext for race. If they're not, then your argument makes much more sense. And without that information, where are we? Well, I think the city has not brought any other cases where they have used this kind of challenge, and my... These aren't cases brought by the city, these are cases brought against the city. Right, they haven't raised any in their argument. But I will say... It's not the city's burden, it's your burden. So the answer to the court's question is that we get there because none of the white jurors were asked about their familiarity with the area of the 7700 block of South Greenwood. If it was such an important... There were other African-American jurors who didn't live in that area as well, though, right? There was at least one who was not even a resident of the city of Chicago, and I don't think that person was asked either. No, no one else was. Once the answer came out the way they did, nobody else was asked. And so for the city to say, well, our trial strategy in jury selection was to remove people who were familiar with the area in any kind of way, and they wanted nobody who had any familiarity at all, but then not to ask any of the potential jurors, including a white juror who was from the south side of Chicago, that whether they had any familiarity with the area of the 7700 block of South Greenwood is indicative of that pretext. Moreover, as the process moved through the district court, there was a shifting of the rationales by the defense in the way they handled the problem. At the trial court, they said they wanted to do this because they were worried that some of these people, these two jurors, might know witnesses involved in the case, even though the witnesses were never asked about during Vardir, and there was no real basis to conclude that. But then in the post-trial motion, and this is at page 1695 in the record, they wrote the reason they struck these jurors was because of their familiarity with the specific block where a plaintiff was arrested and their acquaintanceship with individuals around that block. Which they testified to, as I recall. Well, to what extent? I mean, they did not say they had any information about this specific block. No, but well, they knew the area. I mean, and I read their testimony anyway to indicate at a fairly granular level, you know, it's not like, you know, I taught, I still do teach at the University of Chicago, I kind of know the south side, but I'm sure there are many intersections that I've never gone anywhere near. So I wouldn't say that because I know Hyde Park, I know the particular area. Well, right, and that's what they said, they said we're familiar with the area, but we don't really know what that means. But this is a peremptory. I mean, you know, that's, I think the district judge was on very solid ground not using this as a challenge for cause. It's way too vague to be a challenge for cause, but for a peremptory? Why is this impermissible? Because we would submit that the rationale that's being used isn't supported by the record. You cannot extract from a limited answer that a potential juror has some vague knowledge of the area or that they live not far away and interpret that to mean that they know about the 7700 block of South Greenwood. In the Briscoe case, the court analyzed a nearly identical question, but that case involved a west side drug conspiracy where the prosecutors had specific information that the jurors last three addresses were near where two of the witnesses lived, in close information like that in this case. There were no questions like that asked in this case. Yeah, but all that does is show that there wouldn't have been a basis of a challenge for cause. I don't see why it shows that this is the same as using race, and that's what you need to show in order to prevail on a Batson theory. If we accept the rationale used by the defense in this case, that means that the city of Chicago can strike black jurors from the south side of Chicago merely because they're from the south side of Chicago. Well, there's where you're getting very big, and I think it's fair to say that the testimony of these two members of the veneer was much more focused. I mean, it's one thing to say, you know, I know what the corner of 61st and Woodlawn looks like, or 77th and Greenwood, or what have you, and quite another thing to just decide you're gonna strike anybody who's ever seen the south side of Chicago. They're completely different exercises. It is broader, but what they said in this case was not that they had familiarity with the specific block. They said they knew where it was. One juror said, I live not far away. That could mean five miles, it could mean three, it could mean thirty. It's not clear from the record what they even meant by that, which goes to the reasonableness of the rationale in the first place, which is, is it a genuinely held rationale? How can they say that these jurors had specific information about this block, and may have known witnesses in this case, and might have known some of the things about this case, when there's nothing in the record to support that? And the district court writes that in his opinion analyzing this question, and this is concerning, that preconceived notions of the area could result in bias. I don't really know what that means, to have preconceived notions about the area of 77th and Greenwood, whether you're familiar with it as an African-American, or you're not familiar with it as a white veneer person. Lawyers frequently believe these things, which may turn out to be silly. You will find that in an antitrust case, every economist will be removed from the jury. That may be a stupid thing to do, but lawyers seem to believe that they want people who know less. And here we have an example of a I can't tell you why knowing more would be bad. Again, it's maybe good, maybe bad, but why is it a race-based challenge? Because there's nothing in the record that supports the concept that they knew anything. In an antitrust case, if an economist is challenged, is removed with a peremptory challenge, would you say that demonstrates race discrimination? Of course not. But the economist would be black, or white, or Asian, would have a race, right? But it wouldn't have anything to do with race. So why does this have anything to do with race? Well, because at the court, the Seventh Circuit and the Supreme Court have pointed out that when they're using geography as a basis. Well, that's the link that I think we're concerned is missing here. I mean, we know the South Side is the South Side. Any neighborhood has demographic characteristics, but to show that there's some invidious racial discrimination requires a little bit more than just describing the demographics of the neighborhood. Right, so I agree. And so the question becomes, in the context of the voir dire that took place, is was this a genuinely held rationale at the time that they use these challenges? I don't know how you assess whether it was a genuinely held rationale without knowing what the City of Chicago does in other cases. But apparently you made no inquiry into that. Well, I have not presented that as part of the argument here, Your Honor. Were any of the other jurors asked if they had a familiarity with this particular block? No, Your Honor. None? And that's one of the problems. If you're gonna say your strategy was... Including the other resident of the South Side. There was one other resident of the South Side. And he was not asked if he had a familiarity. Correct. And the court has described... And the other African-Americans were also not asked. Right. I agree. Nobody was asked except for these two jurors. And what, you know, the court has described how you evaluate whether this was a pretext. And they say look at the surrounding circumstances, evaluate the reasonableness of the rationale, and I think the court should consider the shifting rationales that have been given in this case. Because when you look at these circumstances of what the questions they ask, and the differential questioning between the jurors, and the reasonableness of what they're claiming, and why they're claiming they struck these jurors, I think it's clear that this was a pretext for discrimination. But I see that the light is on, so I'll reserve the rest of my time. Okay. Very good. Thank you. Ms. Hornstrom, maybe you could help us by leading us up to the point where this question about familiarity with the neighborhood comes up. Does it just sort of pop in out of the blue, or is there some reason it was asked? Yeah, I'd be happy to. It may have pleased the court. Your question touches on what I think is a mischaracterization by plaintiff's counsel of the reason for the strike. It's being characterized as some sort of overriding trial strategy, and therefore something that's suspicious if it wasn't, you know, asked of everybody. And it really was something that arose during the questioning of the first panel of 20 that was called, and it was when one of the two stricken jurors was being questioned about her job. She had said she works for the University of Chicago, and so defense counsel had asked her in more detail what she does, and she explained that she runs some programs at charter schools on the south side that the University of Chicago is affiliated with. I mean, that's really where the south side came into it, and so then defense counsel asked her where she lives. She said on the south side. And then, you know, the specific question was asked about the 7700 South Block of Greenwood, and she said she lives not far away. So, I mean, it was much more specific to that, and then defense counsel had...there was one other...there was another City of Chicago resident who, you know, sounded like was right next to her because he said something like, pass the microphone. The other City of Chicago resident who said she was a security guard, he went...defense counsel went back to her and said, you also live in the City of Chicago. What part? The south side of Chicago, she said, and then she was asked about her familiarity. And I would like to clear up one misstatement earlier. Plaintiff's counsel referred to, you know, another white juror from the south side that wasn't asked that question. There was no white juror who was identified as being from the south side. There were five prospective jurors in the panel altogether that said they lived in the City of Chicago. Three in the first batch of 20 that were questioned, two in the later batch. In the first, there were the two stricken jurors, and then there was another prospective juror who was seated on the jury and, you know, he mentioned in answer to the judge's initial questions that he lived in the City of Chicago, but no other information was brought out about him. At the time defense counsel was questioning the two prospective jurors that were stricken, that juror had already been questioned and the focus of that questioning there was the fact that he was a cousin of the former Corporation Counsel at the City of Chicago. You know, that's really what that focused on and, frankly, he was an attractive juror to defendants, so I don't know that, you know, any information about familiarity would have would even been acted on in that case because there was there were other factors, but, you know, he had already sort of been covered before the issue of residence or familiarity with this area arose. I mean, as questioning jury selection often happens, you know, it is a process where questions arise based on something somebody says, and it's a mischaracterization to say that this is some sort of overriding trial strategy, you know, that the city should have been expected to ask everybody about, but after it arose, it's interesting to note when the second group was called for questioning at that point, the judge himself, when questioning people, there was another City of Chicago resident, you know, in that batch, and the judge then asked specifically, you live in the City of Chicago, what part? And so, you know, I think the judge became attuned to that issue and asked about it himself, and I take it the answer was not the South Side. That's correct, that's correct. That juror said the North Side. There was nothing to indicate he had any you know, about familiarity with a specific block, was although it's true that, you know, the plaintiff was there in the courtroom, the defendants were there in the courtroom, all the prospective jurors said, I've never seen these people before, I don't recognize them. You know, as evidence comes out in the trial, there are a lot of people that are going to be mentioned, and, you know, there were disputes about physical characteristics of the house, and, you know, it was a reasonable, a plausible reason to keep somebody off a jury that you know, we prefer people not to make judgments based on what they know outside of court. And, you know, all of the arguments that have been raised by Plaintiff's Counsel attacking the justifications really, I think as Judge Easterbrook noted earlier, they're just the reasons why it shouldn't have been granted as a challenge for cause. They don't show that. Well, what does Chicago do in other cases? Do Chicago's jurors regularly exercise challenges against people who live in the neighborhood of the events? I'm afraid, you know, there's not any information about that in the record, and I don't know that background information. It wasn't, you know, raised as a reason why this strike should be considered discriminatory in this one, and as your Honor noted, the burden of persuasion, you know, on the issue of on, I'm not sure I understood your point, that the plaintiff would have the burden of raising the issue at least and asking the city to answer to it. Yeah, it wasn't raised and, you know, if it was something that, you know, these particular lawyers overlooked in other cases, you know, if there was actually evidence of that, that they didn't care about white jurors not, you know, having familiarity with something, then that would be something to raise an inference, but there wasn't anything of the sort here. So the one troublesome thing about all of this to me is that, at least in Chicago, and I suspect this is not unique to Chicago, once you know what neighborhood you're talking about, you probably know quite a bit about the demographics of that neighborhood. So, you know, if you're dealing with a case in Englewood, or if you're doing dealing with a case in Little Village, or if you're dealing with a case in any number of other neighborhoods, you can be awfully sure that you're talking about, you know, maybe predominantly African-American, maybe predominantly Latino, etc., etc. So we don't want a situation where people can strike jurors and say, oh, this is the race or ethnic neutral ground of neighborhood, and then actually have it just be a proxy. Yeah, that's correct, and I mean, and there can't, I mean, it can raise, it can result in disparate impact if you strike people just based on, you know, demographics where they live. But, you know, the disparate impact alone doesn't show discriminatory intent. There has to be a showing that the basis for the strike was to strike someone because of their membership in a racial group and not despite it, and, you know, there was nothing of the sort of that kind of showing here. I mean, it's important to come back to the burden of persuasion being on the person challenging the strike, and also, you know, the issue here, because the district court did specifically find, the district court who, you know, observed the demeanor of all the lawyers, the district court specifically found that the reasons that the defense counsel offered were not pretextual. But your opponent is also complaining about how precisely those reasons were advanced, because everything got kind of collapsed at the trial itself, and the district court, I guess, relies on the same reasons that the city offered on the cause argument, right? There's a little bit of that's an issue was not fully properly, you know, dealt with at trial. But as your Honor noted, and as we explained in our brief, you know, the way that when that's presented itself in criminal cases, the way the courts corrected it is to send it back for a remand on it. Here, the district court did it on its own. It's, you know, it's true that the district court at trial stated, you know, just stated, it's not as plaintiff claims that the district court was the one who in defense gave when they moved to strike for cause. And then in the post trial motion, the plaintiff had an opportunity to raise a whole host of arguments attacking the credibility of that explanation that the defendants then responded to and provided the same reasons. I mean, there's been reference to, you know, shifting rationales. The rationale, I'm not sure I understand that. The rationale has always been the same. It was the jurors familiarity with the, you know, the area around the specific block where the action or potential, I take it, at the time of the strike. Correct, correct, and again, I mean, it's not, you know, it wasn't incumbent on the city's lawyers in order to exercise a peremptory challenge to show that these jurors did, you know, know something about the specific property or knew somebody involved in the case. I mean, the, you know, purpose of peremptory challenges is to address this sort of, you know, possibilities and, you know, hypothesizing and even speculating of sufficient to show that. So, you know, the district court in the end conducted all the steps that it needed to conduct and specifically found that the defendants didn't act with any discriminatory intent and the, you know, that that's not something that's subject to reversal other than for clear error and all the arguments, you know, that have been advanced against the rationale really, at most, go to show that the district court could have ruled the other way, but if, you know, that doesn't show, that doesn't show that it's reversible. It's certainly not a basis to grant a new trial and scrap the result of this. Unless the court has... Suppose we did not have the district court's explanation on a motion for new trial. Would the district, would we still be able to say the district court handled this adequately at trial? I would say no. I would say that it would need to be sent back. Why is that? Based on, you know, there are a number of cases from this court, McMath, among others, Rutledge, where the court has said that it won't assume that just because a peremptory, or because a Batson challenge is denied, that without an explicit credibility finding, it won't, the court won't... Without a specific, I'm sorry. Credibility finding, that this court won't assume that just because the district court ultimately denied a Batson challenge, that it found the reason credible. And your view is that needs to be explicit? That, yeah, that, I mean that's my reading of this court's case law. So if all we had was the trial record, you know, there would still be work for the trial court to do, but, you know, the court did that work and it was not clear error. And if the court has no questions on Morgan's other assertions of trial error, I will rest on our brief and ask that the judgment of the district court be affirmed. All right, thank you very much. Anything further? Your Honors, the reasons attacking the justification show much more than that district court could have decided this the other way. It shows a clear error on the part of the district court. Because what happened, and what the district court did, even in its post-trial ruling, was scramble the analysis. We agree that, on its face, saying familiarity with the area is a race-neutral justification for striking a juror. But when you analyze that reasoning, when you look at whether that was genuinely how, by the surrounding circumstances, the questions, the differential questioning, and all the other things that we've raised, it's doesn't have any legs to stand on. That's not really why they struck these jurors. And it's about much more than Mr. Morgan's civil rights case. This is about whether black jurors can sit on civil rights cases without being struck by the City of Chicago for race-based reasons. And for that, we would ask the court to reverse. Thank you. All right, thank you very much. Thanks to both counsel. We'll take the case under advisement.